Cite as 2022 Ark. App. 195

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-21-493

| | |
|---|---|
| KENY SOSA<br><br>APPELLANT<br><br>V.<br><br>KAWNEER COMPANY, INC.; HELMSMAN MANAGEMENT SERVICES, LLC; AND DEATH & PERMANENT TOTAL DISABILITY TRUST FUND<br>APPELLEES | Opinion Delivered May 4, 2022<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br>[NO. G805579]<br><br><br>AFFIRMED |

## RITA W. GRUBER, Judge

Keny Sosa appeals from a decision of the Arkansas Worker's Compensation Commission (the "Commission") denying his claim for additional medical treatment and additional temporary total-disability benefits. He first contends that substantial evidence does not support the Commission's finding that back surgery was not reasonably necessary in connection with his admittedly compensable injury. He also claims that the Commission erred as a matter of law in concluding that he was not entitled to temporary total-disability benefits because he was terminated for misconduct. We affirm.

Sosa, thirty-one at the time of the hearing, worked for Kawneer Company, Inc., in "extrusion set-up," which involved overseeing and operating an extrusion press. At around 8:15 a.m. on July 23, 2018, an unscheduled sudden release of air pressure, or "burp," occurred "throwing" Sosa across the room. He did not fall or hit anything during the

incident, and he completed his shift through 6:00 p.m. that day. He also worked an eight-hour shift the next day.

On July 26, Sosa went to the Arkansas Occupational Health Clinic and was examined by a nurse practitioner. He complained of pain on his left side, particularly his left shoulder and left knee. Although Sosa testified that he also complained of back pain at this initial visit, there is nothing to suggest this in either the physician's records or the questionnaire he filled out and signed on July 26. In fact, the nurse practitioner specifically noted that Sosa was negative for back pain. Sosa was instructed to take over-the-counter pain relievers and to use heat and ice as needed. Appellees accepted the left-knee injury as compensable and provided benefits, including surgery on his left knee and temporary disability benefits while he was healing.

In October 2018, Sosa saw chiropractor Dr. Eric Walker for complaints of aching, sharp, stabbing low-back pain. An MRI performed on October 18 showed degenerative disc disease at L4-L5 and L5-S1 with mild right-sided neural foraminal narrowing at L4-L5. Dr. Walker assessed Sosa with lumbar-facet-joint syndrome and treated him with in-office therapy. Sosa returned to work full time for Kawneer on November 6.

Sosa continued to work full time with some overtime through November. As part of its policy for its employees who operate industrial equipment, Kawneer required Sosa to take a drug test on November 26. Appellant was terminated for using his child's urine to falsify the test. He testified that he falsified the test because he had been using unprescribed pain cream containing THC for his back.

Following his termination, Sosa sought additional medical treatment for his back. He saw Dr. George Deimel, who recommended steroid injections and physical therapy, neither of which provided relief. In December 2018, Dr. Deimel referred Sosa to neurosurgeon Dr. Marat Grigorov, who opined that surgery was not warranted. Sosa then went to see neurosurgeon Dr. James Blankenship, who evaluated him on April 1, 2019. Dr. Blankenship's initial report states that Sosa was injured at work in "an explosion that knocked him down when he twisted his knee." Dr. Blankenship's history also provides that Sosa "had the immediate onset of lower back and buttock pain as well as knee pain" as a result of the work incident. The report also indicates that Sosa told Dr. Blankenship that he had run and worked out with no back pain before the work incident and that the back pain "started immediately with the accident." Dr. Blankenship recommended an "aggressive work-conditioning program" because Sosa was "significantly deconditioned" after having not worked in four months.

Sosa returned to his treating physician, Dr. Deimel, and incorrectly reported that Dr. Blankenship had recommended surgery. Because of the conflicting reports between Dr. Grigorov and Dr. Blankenship, Dr. Deimel referred Sosa for a final surgical consultation with Dr. Daniel Shepherd. A second MRI was performed on June 5, 2019, and on June 19, Dr. Shepherd examined Sosa. He reviewed the MRIs, noted that the MRI results showed "fairly benign" degenerative findings and no "obvious pathology that can be resolved with surgery," and concluded that surgery was not recommended. On August 15, Dr. Deimel

determined that surgery was not an option, found Sosa had reached maximum medical improvement, and recommended a work-hardening program.

Sosa declined to participate in a work-hardening program due to his concerns about the pandemic. On February 3, 2020, he consulted Dr. Wayne Bruffett for an independent medical evaluation. Dr. Bruffett provided the following opinion:

> I would say with a reasonable degree of medical certainty that Mr. Sosa is at maximum medical improvement with regards to his work injury. He has not sustained any objective evidence of injury. He has had more than adequate treatment. He is certainly not a candidate for any surgery. I would recommend that he return back to work and whatever capacity he feels fit. He certainly has no restrictions. He wants a referral to see Dr. Blankenship again. Apparently, Dr. Blankenship may have made a reference to surgical treatment. Mr. Sosa does not need any surgery.

A second MRI was performed on March 4, 2020. After reviewing this MRI, Dr. Bruffet confirmed that surgery was not indicated, stating,

> This man is 31 years old. He has some disc desiccation at L4-5 L5-S1. He may have a tiny bit of fluid in the facet joints that L4-5 and L5-S1 but looking at L3-4 I think this is a normal physiologic amount. He does not have severe facet arthritis. He does not have a herniated disc. He does not have neurocompression. His MRI looks consistent with a 31-year-old man. He certainly does not need any surgery.

Sosa returned to Dr. Blankenship on March 16 for a follow up regarding his options for his low-back pain. He told Dr. Blankenship that walking, sitting, bending, and standing all significantly aggravate his pain.[1] After reviewing the new MRI, Dr. Blankenship opined that the segmental instability at flexion was significantly worse with marked anterior collapse of the disc space and anterolisthesis. He noted that due to two years of pain and inability to

---

[1]Appellees introduced surveillance video taken on April 6, 2020, of Sosa bending over, carrying items, climbing into the cargo area of a vehicle, and vacuuming a vehicle.

work on his core strengthening, he had developed "ligamentous laxity." He outlined what he could do for Sosa if Sosa elected to proceed with surgical intervention.

Appellees had the case reviewed by Dr. Kenneth Kopacz, who opined that surgical intervention was not medically necessary. Appellees accepted the back injury as compensable and paid for medical treatment but did not accept the surgery as reasonably necessary medical treatment. The Commission determined that Sosa had failed to prove that back surgery by Dr. Blankenship was reasonably necessary in connection with his compensable back injury or that he was entitled to additional temporary total-disability benefits for his back injury.[2]

The ALJ specifically found Sosa's credibility to be an issue, citing the surveillance video showing him vigorously cleaning his vehicles and his falsified drug test. She also noted that Drs. Deimel, Grigorov, Shepherd, and Bruffett all opined that Sosa was not a candidate for surgery. Although the ALJ acknowledged Dr. Blankenship's opinion that surgery was a treatment option was more recent, she found it "significant that the evidence shows that Claimant had been noncompliant with conservative medical treatment suggestions, in that he had refused to participate in a work-hardening program after it was recommended by his treating physician Dr. Deimel, as well as Dr. Blankenship." The ALJ also denied temporary

---

[2]The Commission affirmed and adopted the decision of the administrative law judge (ALJ), including all findings and conclusions therein. When the Commission affirms and adopts the ALJ's opinion as its own, as it did here, we consider both the ALJ's decision and the Commission's opinion. *Jones v. Target Corp.*, 2017 Ark. App. 199, at 9, 518 S.W.3d 119, 125.

total-disability benefits, finding that Sosa had returned to work full time in November 2018 and, but for his termination, would have continued to have available work with Kawneer. The ALJ also noted that Dr. Deimel found him to have reached maximum medical improvement on August 30, 2019, and that Sosa had received temporary total-disability benefits through September 10, 2019. Finally, the ALJ stated that the spring 2020 surveillance video showed Sosa engaged in "laborious activity" in his driveway without surgical intervention.

When reviewing a decision from the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. *Rothrock v. Advanced Env't Recycling*, 2018 Ark. App. 88, at 4, 544 S.W.3d 61, 64. Substantial evidence exists only if reasonable minds could have reached the same conclusion without resort to speculation or conjecture. *White Consol. Indus. v. Galloway*, 74 Ark. App. 13, 45 S.W.3d 396 (2001). The Commission is the ultimate arbiter of weight and credibility. *Fuller v. Pope Cty. Judge*, 2018 Ark. App. 1, at 5, 538 S.W.3d 851, 855. Where the denial of a claim is based on the claimant's failure to meet his burden of proving entitlement to benefits, the substantial-evidence standard of review requires that we affirm if the Commission's decision displays a substantial basis for the denial of relief. *Frances v. Gaylord Container Corp.*, 341 Ark. 527, 20 S.W.3d 280 (2000). We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Cedar Chem. Co. v. Knight*, 99 Ark. App. 162, 258

6

S.W.3d 394 (2007). It is within the Commission's province to reconcile conflicting evidence, including the medical evidence, and to determine the true facts. *Stone v. Dollar Gen. Stores*, 91 Ark. App. 260, 209 S.W.3d 445 (2005). Although it is within the province of the Commission to weigh conflicting medical evidence, the Commission may not arbitrarily disregard medical evidence or the testimony of any witness. *Roberts v. Whirlpool*, 102 Ark. App. 284, 284 S.W.3d 100 (2008). But when the Commission chooses to accept the testimony of one physician over that of another, the appellate court is powerless to reverse the decision. *Hernandez v. Wal-Mart Assocs., Inc.*, 2009 Ark. App. 531, at 3, 337 S.W.3d 531, 532 (citing *Ark. Wood Prods. v. Atchley*, 21 Ark. App. 138, 729 S.W.2d 428 (1987) (rejecting an argument that the opinions of three orthopedic specialists should be given greater consideration than that of the family physician and explaining that the matter involved the weight and probative force of the evidence rather than its substantiality)).

I. *Additional Medical Treatment*

Sosa first argues that substantial evidence does not support the Commission's decision to deny back surgery for his admittedly compensable back injury. Arkansas Code Annotated section 11-9-508(a) (Supp. 2021) requires the employer of an injured employee to promptly provide such medical and surgical treatment "as may be reasonably necessary in connection with the injury received by the employee." The claimant bears the burden of proving entitlement to additional medical treatment. *Patchell v. Wal-Mart Stores, Inc.*, 86 Ark. App. 230, 184 S.W.3d 31 (2004). What constitutes reasonably necessary treatment is a question of fact for the Commission, which has the duty to use its expertise to determine

the soundness of medical evidence and to translate it into findings of fact. *Hamilton v. Gregory Trucking*, 90 Ark. App. 248, 205 S.W.3d 181 (2005). In order to reverse a decision of the Commission, we must be convinced that fair-minded persons with the same facts before them could not have arrived at the conclusion reached by the Commission. *Rich v. Qualserv Corp.*, 2013 Ark. App. 506.

Here, Sosa's back injury was accepted as compensable. The only question before the Commission was whether back surgery constituted reasonably necessary medical treatment in connection with the injury. Only one doctor, Dr. Blankenship, thought surgery was a recommended treatment option. Three doctors—Grigorov, Shepherd, and Bruffett—did not think surgery was warranted. All three examined Sosa, took his history, and reviewed the MRIs. When the Commission chooses to accept the testimony of one physician over that of another or, here, the opinion of three physicians over the opinion of one, the appellate court is powerless to reverse the decision. *Hernandez*, 2009 Ark. App. 531, at 3, 337 S.W.3d at 532. We hold that fair-minded persons with the same facts before them could have arrived at the conclusion reached by the Commission, and we affirm its decision. *Santillan v. Tyson Sales & Distrib.*, 2011 Ark. App. 634, at 7, 386 S.W.3d 566, 570.

## II. *Temporary Total-Disability Benefits*

For his second point on appeal, Sosa contends that the Commission erred as a matter of law by denying him temporary total-disability benefits because it concluded that, had he not been terminated, he would have had work available with Kawneer. He argues that his

case is governed by *Superior Industries v. Thomaston*, 72 Ark. App. 7, 32 S.W.3d 52 (2000); thus, we must reverse.

Temporary total disability is determined by the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. An injured employee is entitled to temporary total-disability benefits when he is totally incapacitated from earning wages and remains in his healing period. *Bankston v. Univ. of Ark. Little Rock*, 2017 Ark. App. 72, at 6, 510 S.W.3d 825, 829. The healing period ends when the employee is as far restored as the permanent nature of his injury will permit. *St. Edward Mercy Med. Ctr. v. Dart*, 2011 Ark. App. 583. The question of when the healing period has ended is a factual determination for the Commission that will be affirmed if it is supported by substantial evidence. *Clement v. Johnson's Warehouse Showroom, Inc.*, 2012 Ark. App. 17, at 10, 388 S.W.3d 469, 475.

Sosa was paid temporary total-disability benefits from the date he was terminated—November 26, 2018—through September 10, 2019. His treating physician, Dr. Deimel, found he had reached maximum medical improvement on August 5, 2019. Sosa alleges that he would have continued to work until April 1, 2019, had Kawneer not fired him.[3] He argues that he was not able to complete work conditioning in a timely manner because appellees did not approve it until March 2020. When Dr. Blankenship next saw him, he recommended surgery. Sosa argues that he is entitled to benefits from that April 1 date until

---

[3]On April 1, Dr. Blankenship recommended that Sosa be off work until he completed a work-conditioning program and was reevaluated.

a date to be determined. Since he was paid through September 2019, the issue is whether he should receive benefits after that time.

Here are the Commission's findings on the issue:

In this matter, the evidence presented at the hearing shows that Claimant returned to work after his knee surgery in November of 2018, with accommodations being provided by Kawneer, within his physical restrictions. In fact, the evidence showed that Claimant returned to work full time and even earned some over-time hours. Furthermore, but for Claimant's falsifying his drug test (which resulted in him being terminated for cause), testimony showed that Kawneer had work available within his physical restrictions during the period of time in question. Moreover, the evidence showed that Claimant's treating physician, Dr. Deimel, found him to have reached maximum medical improvement on August 30, 2019. Lastly, an investigative summary and video surveillance from the Spring of 2020, showed Claimant engaged in laborious activity in the driveway of his home and that Claimant was capable of pulling a trailer with his vehicle, without him having undergone surgical intervention for his back.

Based on all of the foregoing evidence presented in this case, I find that Claimant failed to prove his entitlement to temporary total disability compensation from April 1, 2019, to a date yet to be determined.

Sosa contends that our decision in *Superior Industries* requires us to reverse the Commission's denial. To understand the holding in *Superior Industries*, we turn to Arkansas Code Annotated section 11-9-526 (Repl. 2012), which provides as follows:

If any injured employee refuses employment suitable to his or her capacity offered to or procured for him or her, he or she shall not be entitled to any compensation during the continuance of the refusal, unless in the opinion of the Workers' Compensation Commission, the refusal is justifiable.

We held in *Superior Industries* that termination for misconduct was not a sufficient basis for finding that a claimant refused suitable employment so as to disqualify him from disability benefits under Ark. Code Ann. § 11-9-526. That is not what happened here. The issue in

this case is not whether Sosa refused suitable employment. The issue is when Sosa's healing period ended. The healing period ends when the employee is as far restored as the permanent nature of his injury will permit, *St. Edward Mercy Med. Ctr.*, 2011 Ark. App. 583, and is a factual determination for the Commission that we will be affirm if it is supported by substantial evidence. *Clement*, 2012 Ark. App. 17, at 10, 388 S.W.3d at 475. Dr. Deimel found Sosa to be at maximum medical improvement as of August 5, 2019, and Sosa was paid benefits until September 10, 2019. His involuntary termination was irrelevant.

*Superior Industries* simply holds that when a claimant is terminated, not by his or her choice but at the option of the employer, he or she is not precluded from disability benefits under Arkansas Code Annotated section 11-9-526. *Packers Sanitation Servs., Inc. v. Quintanilla*, 2017 Ark. App. 213, at 9, 518 S.W.3d 701, 707. This does not, however, mean that a claimant is entitled to benefits beyond the duration of the disability—here, when Dr. Deimel determined that Sosa had reached maximum medical improvement.

Affirmed.

HARRISON, C.J., and ABRAMSON, J., agree.

*Tolley & Brooks, P.A.*, by: *Evelyn E. Brooks*, for appellant.

*Mayton, Newkirk & Jones*, by: *Rick Behring Jr.*, for appellees.

11